UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Danny Lee McCullough, ) | |
| ) | C/A No.: 4:14-cv-1362-DCN-TER |
| Plaintiff, ) | |
| ) | |
| v. ) | REPORT AND RECOMMENDATION |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether the appropriate legal standards were applied. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

I. Relevant Background

    A. Procedural History

On March 16, 2010, Plaintiff filed an application for Disability Insurance Benefits. Tr. at 9, 148-149. Plaintiff alleged disability beginning on November 30, 2004. Tr. at 9, 148. His application was denied initially and upon reconsideration. Tr. at 9, 101-105, 107-109. On December 5, 2012,

1

Plaintiff had a hearing before Administrative Law Judge ("ALJ") Walter C. Hearin. Tr. at 21-96 (Hr'g Tr.). The ALJ issued an unfavorable decision on December 14, 2102, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 9–20. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1-3. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on April 14, 2014. (Doc. # 1).

    B.    Plaintiff's Background and Medical History

    1.    Background

Plaintiff was born on January 19, 1959, and was 50 years old on the date last insured. Tr. at 19. He has past relevant work ("PRW") as a construction worker, sales clerk, and steel worker. Id.

    2.    Medical History

Plaintiff has a history of traumatic right lower extremity injury and a history of brain aneurysm. The record documents Plaintiff's treatment for his various conditions. The Commissioner has provided a thorough review of the medical evidence before the ALJ in this case in its brief. The Court dispenses with a lengthy recitation and summary of the medical records, and instead will note relevant facts and records as necessary to the Report.

    C.    The Administrative Proceedings

    1.    The Administrative Hearing

        a.    Plaintiff's Testimony

At the hearing on December 5, 2012, Plaintiff testified that he had right leg pain, resulting from a work-related fall off scaffolding in 2004. Tr. at 42, 52. He also testified that he had a brain hemorrhage in 2008, which resulted in him having balancing problems, dizzy spells, and short term

memory loss. Tr. at 51-52. He also testified that his left side had weakened. Tr. at 53-54. Plaintiff testified he could walk about 100 yards, or 10-15minutes before stopping; could stand for about 10-15 minutes, and sit for an hour. Tr. at 57-58, 93. He could lift twenty pounds occasionally. Tr. at 94. Plaintiff indicated that he spent the majority of his day in the recliner watching television. Tr. at 61-62. Plaintiff testified that he wakes 3-5 times during the night. Tr. at 63. At the time of the hearing, Plaintiff was not on any prescription pain medications. Tr. at 56.

Plaintiff testified that he showers and dresses on his own, prepares TV dinners, helps with the laundry, vacuums on occasions and helps with the trash. Tr. at 36, 37, 38, 61-62. He also accompanies his wife to the grocery store and attends church. Tr. at 35. He indicates that he does not help with many other household and outdoor chores. Tr. at 36-39.

        b.      Sonya McCullough's testimony

Plaintiff's wife also testified. Tr. 70-81. She stated that Plaintiff could not go back to the construction field after his 2004 injury and confirmed that he had not looked for any other type of work. Tr. at 71. She further opined that Plaintiff was a different person post-hemorrhage. Tr. at 72. He spoke slower, became easily frustrated, sat all the time, and had problems with coordination and balance. Tr. at 72. He also had memory problems. Tr. at 73-74. Plaintiff's wife testified that Plaintiff had not driven in a couple of years. Tr. at 72. She had only seen him drink a couple of times in the last two years. Tr. at 76. The ALJ then read Plaintiff's wife the August 9, 2010, report of Ms. Short, and she agreed that it might have been an accurate assessment of Plaintiff's functional ability at that time. Tr. at 81.

        c.      Vocational Expert Testimony

Vocational Expert ("VE") Jacqueline Kennedy Merritt also testified at the hearing. Tr. at 83-

3

92. The VE classified Plaintiff's past relevant work. Tr. at 83-84. and answered multiple hypothetical questions posed to her by the ALJ and Plaintiff's counsel regarding whether occupations existed for someone of Plaintiff's age, education, work experience, and varying residual functional capacities ("RFC"). Tr. at 84-92. The ALJ indicated to the VE that if her testimony should differ from the Dictionary of Occupational Titles ("DOT") she should alert the court to that fact and give a basis for her opinion, but that otherwise, he (the ALJ) would assume that the vocational testimony given is entirely consistent with the DOT and allied publications. Tr. at 83.

Based on a hypothetical for an individual with claimant's age, education, work experience, and RFC, the VE identified the jobs of router (DOT # 222.587-038) and order caller (DOT # 209.667-014) as representative jobs which could be performed.

2.    The ALJ's Findings

In his decision dated December 14, 2012, the ALJ made the following findings of fact and conclusions of law:

1. Claimant last met the insured status requirements of the Social Security Act on September 30, 2009.

2. Claimant did not engage in substantial gainful activity during the period from his alleged onset date of November 30, 2004 through his date last insured of September 30, 2009 (20 CFR 404.1571 et seq.).

3. Through the date last insured, claimant had the following severe impairments: history of traumatic right lower extremity injury and a history of brain aneurysm (20 CFR 404.1520(c)).

4. Through the date last insured, claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, claimant had the residual functional capacity to perform less than the full

   range of light work as defined in 20 CFR 404.1567(b), with restrictions that require: simple, routine, repetitive tasks; no ongoing interaction with the general public; no lifting or carrying over 20 pounds occasionally and 10 pounds frequently; no more than frequent balancing; no more than occasional stooping, crouching, kneeling, crawling, and climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; no exposure to hazards such as unprotected heights and dangerous machinery; and no driving.

6. Through the date last insured, claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. Claimant was born on January 19, 1959 and was 50 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical–Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82–41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. Claimant was not under a disability, as defined in the Social Security Act, at any time from November 30, 2004, the alleged onset date, through September 30, 2009, the date last insured (20 CFR 404.1520(g)).

Tr. at 9-20.

II.  Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1. The ALJ failed to resolve a conflict between his finding of the claimant's RFC and the dictionary of occupational titles' description of the job recommended by the vocational expert (VE).

2. The ALJ used a single notation in the record as a basis to diminish the claimant's credibility.

    3.    The ALJ gave insufficient weight to the decision of Hearing Officer Harry Smithson of the South Carolina Department of Health and Human Services and failed to explain his reasoning.

    4.    The ALJ failed to give proper weight to the opinions of claimant's treating physician.

    5.    The ALJ's decision was in error by giving so much weight to [a telephone report of contact by Ms. Short].

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

    A.    Legal Framework

    1.    The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. See, e.g., Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment

included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] FN3 and (5) whether the impairment prevents her from doing substantial gainful employment. See 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d) (5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that

---

[1]The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); see Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir.2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. Hall v. Harris, 658 F.2d 260, 264–65 (4th Cir.1981); see generally Bowen v. Yuckert, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (regarding burdens of proof).

    2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. See Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Walls, 296 F.3d at 290 ( citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." Vitek v. Finch, 438 F.2d 1157, 1157–58 (4th Cir.1971); see Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir.1988) ( citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390, 401; Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir.2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound

foundation for the Commissioner's findings and that her conclusion is rational. See Vitek, 438 F.2d at 1157–58; see also Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir.1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir.1972).

B.     Analysis

1. Alleged Conflict Between VE Testimony and DOT

The VE testified that, with the limitations that the ALJ ultimately included in the RFC, Plaintiff could perform the jobs of router and order caller. Tr. at 88. The ALJ relied on the VE's testimony to find that Plaintiff was not disabled under the Act. Tr. at 20. Plaintiff argues that the VE's testimony regarding these jobs conflicts with the reasoning level identified in the DOT. Pl. Br. at 1. Specifically, Plaintiff contends that his RFC limitation to simple, routine, and repetitive tasks renders him unable to perform the jobs identified by the VE. Id.

The DOT provides that the jobs of router (DOT # 222.587-038) and order caller (DOT # 209.667-014) have a general educational development ("GED") reasoning level of 2, which requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and the ability to [d]eal with problems involving a few concrete variables in or from standardized situations." See DOT (4th Ed., Rev.1991), available at 1991 WL 672123 (DOT # 222.587-038) and 1991 WL 671807 (DOT #209.667-014). SSR 00-4p requires that, before relying on VE testimony to support a disability determination or decision, the ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs...and information in the Dictionary of Occupational Titles (DOT)....". SSR 00-4p further provides that "[w]hen there is an apparent unresolved conflict between VE...evidence and the DOT,

9

the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE...evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency." This process allows the ALJ to resolve any conflicts by determining if the explanation given by the VE "is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information."As previously noted, in this case, the ALJ, prior to any testimony by the VE, indicated to the VE as follows:

> If, at any time during your testimony today, your testimony should differ from the Dictionary of Occupational Titles and allied publications, please alert us to that fact and give us the basis for your opinion. Otherwise, I will assume that your testimony is entirely consistent with the DOT and allied publications.

Plaintiff contends that remand is warranted because the ALJ failed to obtain an explanation for the conflict between Plaintiff's RFC and GED reasoning level two set forth in the DOT. Pl. Br. at 1. The Commissioner argues that a GED reasoning level of two is not inconsistent with the ability to perform only simple tasks.

The ALJ limited Plaintiff to simple, routine, repetitive tasks. Tr. at 14. The primary issue with the enumerated jobs is whether a reasoning level of 2 requiring the ability to carry out "detailed but uninvolved" instructions conflicts with the ALJ's finding that Plaintiff could only engage in "simple" tasks. This court has previously held that a reasoning level of 2 is generally consistent with an RFC limiting the plaintiff to "simple, repetitive tasks and instructions." See Lindsey v. Astrue, C/A No. 9:10-1079-CMC, 2011 WL 2214779, *3-4 (D.S.C. June 7, 2011) (Currie, J.) (The VE's testimony and the information in the DOT were generally consistent because even with the Plaintiff's RFC limitations of simple, repetitive tasks and instructions, he could perform an unskilled job with a GED reasoning level of 2). In so holding, the court stated that the limitation to "simple"

instructions is generally consistent with the ability to carry out instructions that are "detailed but uninvolved." Id. (citing Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005) ("While reasoning level two notes the worker must be able to follow 'detailed' instructions, it also . . . downplayed the rigorousness of those instructions by labeling them as being 'uninvolved;' and ultimately finding that someone able to perform simple, repetitive instructions indicates a level of reasoning of 2")); see Weaver v. Colvin, Civil Action No. 1:12-cv—02870-JMC, 2014 WL 1320009, *3 (D.S.C. Mar. 31, 2014) (Childs, J.)(finding that there was no conflict between the RFC limitations assessed by the ALJ which included low-stress work, defined as no more than occasional decision making, which does not require complex reading, writing, or math and the DOT requirements for the identified jobs that had a reasoning level of 2); see also, Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005)(holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine tasks"); Money v. Barnhart, 91 Fed.Appx. 210, 214 (3d Cir. 2004)("Working at reasoning level 2 would not contradict the mandate that [the] work be simple, routine and repetitive").[3] In this case, Plaintiff's limitation to simple, routine, repetitive tasks, is

---

[3]The court notes that the Fourth Circuit Court of Appeals has not specifically addressed the correlation between DOT reasoning levels and an RFC limiting a claimant to simple, routine, repetitive tasks. There is some split of authority within the Fourth Circuit, at least as to GED Reasoning Level 2. See Graham Willis v. Colvin, 2013 WL 6840465 (2013) and Weaver v. Colvin, C/A No. 1:10CV582, 2013 WL 3989561, at n. 14 (M.D.N.C. Aug.2, 2013) (collecting cases). The court acknowledges that in the District of South Carolina, some courts have found "that a conflict exists between a GED reasoning level of two or three and a limitation to simple, routine, and repetitive tasks" and that such a conflict must be addressed and resolved by the ALJ. See Shivers v. Colvin, CIVIL ACTION NO. 6:12-3381-SB, 2014 U.S. Dist. LEXIS 42361, at *10-12 (D.S.C. 2014) (Blatt Jr., J.).  See Phillips v. Astrue, C/A No. 3:11–1085–MBS, 2013 WL 353604, at *2 (D.S.C. Jan.29, 2013) (holding that the Commissioner's position that the plaintiff, who was limited to "simple, one to two step tasks," could perform jobs GED reasoning levels of two or three was not substantially justified)(emphasis added); Martin v. Astrue, C/A No. 6:11–1572–TMC–KFM, 2012 WL 4479280, at *15–16 (finding there was an unexplained potential conflict between GED reasoning levels two and three and the plaintiff's ability to

11

equivalent to simple, repetitive tasks and instructions. Accordingly, there is no conflict between the RFC limitations assessed by the ALJ and the DOT requirements for the jobs of router (DOT # 222.587-038) and order caller (DOT # 209.667-014).[4]

Plaintiff also asserts that the ALJ failed to properly evaluate his credibility. The undersigned disagrees. The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir.1985).

It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The

---

perform no more than unskilled tasks; short, simple instructions; minimal changes in routine; and limited interaction with the public, supervisors, and co-workers)(emphasis added), adopted by 2012 WL 4482943 (D.S.C. July 27, 2012); Patterson v. Astrue, C/A No. 8:07–1602–HFF–BHH, 2008 WL 2944616, at *5 (D.S.C. July 31, 2008) (noting vocational expert never expressly discussed whether plaintiff's inability to perform more than 1–2 step instructions was compatible with the position requiring at least a reasoning level of two)(emphasis added); Tadlock v. Astrue, C/A No. 8:06–3610–RBH–BHH, 2008 WL 628591, at * 10 (D.S.C. March 4, 2008) (remanding so that the vocational expert could give testimony as to whether the plaintiff could perform the recommended jobs, which had a reasoning level of two, considering the claimant's inability to do more than simple and routine work). However, most of these cases are distinguishable based on the specific language included in the respective RFCs and are fact specific.

[4]The Court notes the job descriptions applicable to these jobs. The synopsis for a router (DOT # 222.587-038) is as follows: "[s]tamps, stencils, letters, or tags packages, boxes, or lots of merchandise to indicate delivery routes. Reads addresses on articles and determines route, using standard charts." The job description for an order caller (DOT # 209.667-014) provides: "[r]eads items listed on order sheets to LABORER, STORES (any industry) who gathers and assembles items or to BILLING TYPIST (clerical) who prepares bills for items. Indicates on order sheets items located and items that are not available. May read items to CHECKER (clerical) I who examines articles prior to shipping. May be designated by kind of data called out to other worker as Weight Caller (clerical); Yardage Caller (textile)." Both of these jobs appear to equate with simple, routine, repetitive tasks, which would be commiserate with Plaintiff's RFC.

determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision. SSR 96–7p.

Under Craig v. Chater, 76 F.3d 585, 591–96 (4th Cir.1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96–7p.

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir.1989) ( quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir.1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p.

Here, the ALJ accepted that Plaintiff had medically determinable impairments that could reasonably be expected to cause the alleged symptoms, but cited both objective and subjective

13

evidence detracting from Plaintiff's statements regarding the extent of his limitations. Tr. at 14-18. The ALJ provided a thorough analysis of the record evidence and the contrast between the medical findings and Plaintiff's statements regarding his abilities. Tr. at 15-17. The ALJ discussed the medical evidence related to Plaintiff's 2004 right shin fracture and 2008 brain hemorrhage Tr. at 15-16. He then noted Plaintiff's self-reported functional abilities, including those set forth in Ms. Short's August 9, 2010, report of contact, which indicates that Plaintiff stated that he could perform the following activities: (1) drive alone; (2) make money transactions; (3) walk without an assistive device; (4) walk on an uneven surface for about 100 yards; (5) stand in one spot for about 30 minutes; (6) climb a flight of stairs using a handrail; (7) perform personal care tasks (*e.g.*, dressing, showering, and shaving); (8) grocery shop alone; and (9) perform household chores such as washing dishes, preparing small meals, laundering clothes, sweeping, and vacuuming. Tr. at 187. The ALJ further explained that Plaintiff's own wife testified that Ms. Short's report might have been an accurate assessment of Plaintiff's functional ability at that time as Plaintiff "was coming around . . . fairly good." Tr. at 16, 81. The ALJ also discussed how statements made by Plaintiff and his wife in 2011 and 2012 did not necessarily reflect Plaintiff's status prior to his September 30, 2009, DLI Tr. at 16-17. The ALJ's consideration of these factors indicates that he adequately considered how Plaintiff's impairments affected his daily routine. Courts have found that evidence of similar levels of activity tends to weigh against a finding of disability. See Johnson, 434 F.3d at 658 (ALJ properly found claimant's description of "excruciating" pain inconsistent with her testimony that she cooked, cleaned the house, read, watched television, visited relatives, and attended church twice weekly); accord Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994); Gross, 785 F.2d at 1166.

Finally, the ALJ noted that although Plaintiff testified that he had not abused alcohol or used drugs since his September 2008 brain hemorrhage. Tr. at 17, 67. a hospital report from August 2009

14

noted that Plaintiff smelled of alcohol. Tr. at 17, 326. Contrary to Plaintiff's argument, this last reason was not the only reason cited but the ALJ, but instead was noted as "additional evidence" which the ALJ found to weigh against Plaintiff's credibility. For these reasons, the ALJ's evaluation of Plaintiff's credibility is supported by substantial evidence.

Plaintiff next asserts that the ALJ erred in giving little weight to the determination of Harry F. Smithson, Hearing Officer with the South Carolina Department of Health and Human Services, that Plaintiff qualified for Medicaid. Tr. at 18, 44, 202-10. In evaluating this evidence the ALJ indicated as follows:

> I accord Mr. Smithson's findings little weight. Mr. Smithson's decision considered whether claimant qualified for Medicaid benefits based on disability as of February 2011, rather than on or before September 30, 2009. In addition, Mr. Smithson's findings are inconsistent with opinions rendered by Dr. Carr concerning the effects of claimant's riht knee problems prior to the date last insured. Moreover, Mr. Smithson did not review Dr. Carr's treatment notes or opinions, therapy notes following claimant's head injury, or Ms. Short's report from August 2010.

Tr. at 18.

As the ALJ explained, "Mr. Smithson's decision considered whether [Plaintiff] qualified for Medicaid benefits based on disability as of February 201[0], rather than on or before [his DLI of] September 30, 2009." Tr. at 18. See 20 C.F.R. §§ 404.130, 404.132 (collectively explaining that a claimant must meet the Act's definition of disability prior to his DLI); see also Johnson v. Barnhart, 434 F.3d 650, 655-56 (4th Cir. 2005) ("To qualify for DIB, Johnson must prove that she became disabled prior to the expiration of her insured status"). Although HO Smithson considered earlier evidence to find Plaintiff disabled as of February 1, 2010, see Pl. Br. at p. 3, there is no indication that Mr. Smithson believed Plaintiff to be disabled prior to the date that he found, i.e., February 1, 2010. Tr. at 210. Indeed, Mr. Smithson labeled February 1, 2010, as "the most favorable possible retroactive date for [Plaintiff]." Tr. at 210.

The ALJ also noted that Mr. Smithson's decision conflicted with the record evidence, including the opinions of Plaintiff's treating physician, Dr. Carr. Finally, the ALJ noted that Mr. Smithson did not review all of the evidence which was before that the ALJ, including Dr. Carr's treatment notes or opinions, therapy notes following claimant's head injury, or Ms. Short's August 9, 2010, report (discussed in greater detail, infra), which included Plaintiff's self-reported functional abilities. Tr. at 18, 187. After consideration, the court finds that the ALJ's evaluation and decision to assign little weight to Mr. Smithson's decision is supported by substantial evidence.

Plaintiff next asserts that the ALJ's erred in his evaluation of the opinion evidence of treating physician Dr. Boyd. The Social Security Administration's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Generally, more weight is given to the opinions of examining physicians than nonexamining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. See 20 C.F.R. §§ 404.1508 and § 404.1527(c)(2). The medical opinion of a treating physician is entitled to controlling weight, i.e. it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 404.1527(c)(2), SSR 96-2p, and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2 31, 35 (4th Cir. 1992)).

In determining what weight to give the opinions of medical sources, the ALJ must apply all

of the factors in 20 C.F.R. § 404.1527(c)(1)-(6), which are: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and, other relevant factors. See SSR 96-2p; Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006).

>The ALJ's discussion of his evaluation of Dr. Boyd's opinion reads as follows:
>
>I accord Dr. Boyd's opinions little weight as they have little probative value for the period at issue. Dr. Boyd rendered these opinions over two years after claimant's date last insured and Dr. Boyd did not treat claimant prior thereto. In addition, these opinions are inconsistent with evidence from prior to and soon after the date last insured, which shows claimant improved greatly with therapy following his head injury, had only mild memory problems, and demonstrated normal strength and gait on examinations. These opinions are also inconsistent with Ms. Short's report of contact from August 2010, in which claimant reported performing substantial daily activities and denied memory problems. I further note that, though Dr. Boyd reported claimant was unable to work due to cognitive problems and had "severe" neurologic deficits including problems balancing, Dr. Boyds's contemporaneous examination actually showed normal speech and language, normal attention and concentration, normal affect, normal reflexes, normal strength, steady gait, and normal sensation. These examination findings are inconsistent with Dr. Boyd's opinions;.

Tr. at 17-18.

As the ALJ noted, Dr. Boyd gave his opinion more than two years after Plaintiff's date last insured ("DLI"). Tr. 17, 394. Although post-DLI evidence can be given retrospective consideration where it permits an inference of linkage with the claimant's pre-DLI condition, see Bird v. Commissioner of Social Security, 699 F.3d 337, 340-41 (4th Cir. 2012), that is not the case here. Dr. Boyd did not treat Plaintiff prior to his DLI, and his opinion does not suggest the necessary linkage to claimant's pre-DLI condition. Tr. at 394. See 20 C.F.R. §§ 404.130, 404.132 (collectively explaining that a claimant must meet the Act's definition of disability prior to his DLI); see also Johnson, 434 F.3d at 655-56. Moreover, as the ALJ indicated, Dr. Boyd's contemporaneous

17

examination notes are inconsistent with his opined limitations. Tr. at 18. Specifically, despite asserting that Plaintiff had severe cognitive and neurologic deficits, Dr. Boyd observed Plaintiff to have normal speech, language, attention span, concentration, affect, and sensation. Tr. at 18, 394. Dr. Boyd also found Plaintiff to have normal muscle power and walk with a steady gait. Tr. at 18, 394. The ALJ also noted that Dr. Boyd's opinion was inconsistent with the other evidence of record Tr. at 17-18. See 20 C.F.R. § 404.1527(c)(3)-(4) (collectively explaining that the Commissioner gives greater weight to medical source opinions that are supported by and consistent with the record evidence). For example, the ALJ explained that during (and soon after) the relevant period, Plaintiff had improved with therapy, had only mild memory problems, and demonstrated normal strength and gait. Tr. at 17-18. Additionally, the ALJ noted that Dr. Boyd's opinion conflicted with Ms. Short's August 9, 2010, report. Tr. at 18, 187. *See* 20 C.F.R. § 404.1527(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). Therein, Plaintiff stated that he could perform the following activities: (1) drive alone; (2) make money transactions; (3) walk without an assistive device; (4) walk on an uneven surface for about 100 yards; (5) stand in one spot for about 30 minutes; (6) climb a flight of stairs using a handrail; (7) perform personal care tasks (*e.g.*, dressing, showering, and shaving); (8) grocery shop alone; and (9) perform household chores such as washing dishes, preparing small meals, laundering clothes, sweeping, and vacuuming. Tr. at 187. Plaintiff also denied any memory problems. Tr. at 187. Ms. Short noted no problems with Plaintiff's speech or ability to remember details. Tr. at 187.

     Moreover, although the ALJ assigned little weight to Dr. Boyd's opinion. Tr. at 17-18, he still accounted for many of the limitations opined by Dr. Boyd. Tr. at 14, 394. For example, akin to Dr. Boyd, the ALJ also limited Plaintiff to no driving. Tr. at 14, 394. And similar to Dr. Boyd's opinion that Plaintiff had poor judgment and short-term memory, the ALJ limited Plaintiff to simple, routine,

18

and repetitive tasks that avoided ongoing interaction with the general public. Tr. at 14, 394. For these reasons, the ALJ's evaluation of, and decision to accord little to, Dr. Boyd's November 21, 2011, opinion is supported evidence.

Finally, Plaintiff argues that the ALJ erred in assigning too much weight to a telephone report of contact by Ms. Short. Again, the report of contact reflected that Plaintiff stated that he could perform the following activities: (1) drive alone; (2) make money transactions; (3) walk without an assistive device; (4) walk on an uneven surface for about 100 yards; (5) stand in one spot for about 30 minutes; (6) climb a flight of stairs using a handrail; (7) perform personal care tasks (*e.g.*, dressing, showering, and shaving); (8) grocery shop alone; and (9) perform household chores such as washing dishes, preparing small meals, laundering clothes, sweeping, and vacuuming. Tr. at 187. Plaintiff also denied any memory problems. Tr. at 187. Ms. Short noted no problems with Plaintiff's speech or ability to remember details. Tr. at 187. The ALJ considered this relevant information, in conjunction with the entire record, in reaching his conclusions.

Essentially, the Plaintiff asks this court to re-weigh this evidence relating to his DIB application. See Pl. Br. at pp. 4-5. This is not appropriate. Under the substantial evidence standard of review, the court should not undertake de novo review of the Commissioner's decision or re-weigh the evidence of record. See Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1990); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Indeed, even if this court might have reached a different conclusion, decided the case differently, it must affirm the Commissioner's findings, if they are supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 390, 401 (1971). For the reasons set forth herein, substantial evidence supports the decision that Plaintiff is not disabled.

III.    Conclusion and Recommendation

This court is charged with reviewing the case only to determine whether the findings of the

19

Commissioner were based on substantial evidence. <u>Richardson</u>, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. <u>Blalock</u>, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this court cannot reverse that decision merely because the evidence would permit a different conclusion. <u>Shively v. Heckler</u>, 739 F.2d at 989. As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence.

Based upon the foregoing, this court recommends that the Commissioner's decision be **AFFIRMED**.

Respectfully submitted,

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

July 22, 2015  
Florence, South Carolina